IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMMANUEL GONZALEZ,   Petitioner, | : : |
| v. | : No. 1:20-cv-1992 : : (Judge Rambo) : |
| CATRICIA HOWARD,   Respondent | : : |

## **MEMORANDUM**

On October 29, 2020, *pro se* Petitioner Emmanuel Gonzalez ("Petitioner"), who is currently incarcerated at the Federal Correctional Institution Allenwood-Medium in White Deer, Pennsylvania ("FCI Allenwood-Medium"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. No. 1.)  Petitioner maintains that the Bureau of Prisons ("BOP") is violating his Eighth Amendment rights by failing to provide safe living conditions during the COVID-19 pandemic.  (*Id.*)  Petitioner asserts that: (1) his mental health is "deteriorating" because of the pandemic; (2) FCI Allenwood-Medium is providing inadequate testing; (3) social distancing is impossible because he has a cellmate; and (4) FCI Allenwood-Medium has an inadequate HVAC system to eliminate COVID-19.  (*Id.* at 6-7.)  As relief, he requests that the Court order the BOP to "enlarge[] home confinement for ALL nonviolent, elderly 65 and older, and people with underlying health conditions that meet CDC

guidelines, including people with PTSD, depression, anxiety, bipolar and any cognitive impairment [that] is not expected to recover." (*Id.* at 7.) Following an Order to show cause (Doc. No. 6), Respondent filed a response on December 15, 2020 (Doc. No. 10). To date, Petitioner has filed neither a traverse nor a motion seeking an extension of time to do so. Accordingly, because the time period for filing a traverse has expired, Petitioner's § 2241 petition is ripe for disposition.

I.      BACKGROUND

   A.   The BOP's Response to COVID-19

To mitigate the spread of COVID-19, the BOP has modified its operations nationally. *See COVID-19 Coronavirus*, https://www.bop.gov/coronavirus (select "BOP COVID-19 Modified Operations Plan" hyperlink) (last accessed December 16, 2020, 12:05 p.m.). These modified operations are to provide for limited inmate movement in order to "prevent congregate gathering and maximize social distancing." *Id.* The BOP has implemented enhanced health screenings of staff at all locations. *Id.* Moreover, all newly admitted inmates are screened for COVID-19, including a symptom screen, temperature check, and an approved viral PCR test. *Id.* Inmates who are asymptomatic and/or test positive are placed in medical isolation; inmates who are asymptomatic and test negative are placed in quarantine. *Id.* Inmates remain in isolation until they test negative or are cleared

by medical staff. *Id.* All inmates are tested again before transfer to a new facility. *Id.*

The BOP is also requiring that contractor access be restricted to those performing essential services, religious worship services, and necessary maintenance. *Id.* All contractors "must undergo a COVID-19 screening and temperature check prior to entry." *Id.* All volunteer visits have been suspended "unless approved by the Deputy Director of the BOP." *Id.* Inmate movement "in small numbers" is authorized for commissary, laundry, showers three (3) times per week, and telephone and TRULINCS access. *Id.*

### B. Use of Home Confinement by the BOP

The BOP has exclusive discretion to "designate the place of [a] prisoner's imprisonment." 18 U.S.C. § 3621(a). Pursuant to this authority, the BOP may "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). The BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." *Id.*

On March 26, 2020, the Attorney General issued a Memorandum encouraging the BOP to prioritize home confinement, as appropriate, in response

to the COVID-19 pandemic. *See Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last accessed Dec. 16, 2020 1:11 p.m.). To determine whether home confinement should be authorized, the Attorney General directed the BOP to consider "the totality of circumstances for each individual inmate, the statutory requirements for home confinement," and the following non-exhaustive discretionary factors: (1) the age and vulnerability of the inmate to COVID-19, in accordance with Centers for Disease Control ("CDC") guidelines: (2) the security level of the facility currently holding the inmate; (3) the inmate's conduct in prison; (4) the inmate's score under the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN"); (5) whether the inmate "has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety"); and (6) the inmate's crime of conviction and "assessment of the danger posed by the inmate to the community." *Id.*

On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was implemented, authorizing the Attorney General and the BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" due to the COVID-19

4

pandemic. CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020). On April 3, 2020, the Attorney General issued a memorandum authorizing the Director of the BOP to maximize the use of home confinement for appropriate inmates held at facilities where the Director determines COVID-19 has materially affected operations. *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19*, https://www.justice.gov/file/1266661/download (last accessed Dec. 16, 2020 1:21 p.m.). This memorandum increased the number of inmates to be assessed for home confinement and directed that the BOP prioritize the most vulnerable inmates at the most affected facilities. *Id.* The memorandum stressed that the BOP should "continue making the careful, individualized determinations BOP makes in the typical case" to remain faithful to its duty to protect the public. *Id.* As of January 4, 2021, the BOP has 8,020 inmates on home confinement, with a total number of 19,654 inmates being placed in home confinement from March 26, 2020. *COVID-19 Home Confinement Information*, https://www.bop.gov/coronavirus (last accessed Jan. 4, 2021 7:16 a.m.).

    **C.**    **Facts Regarding Petitioner**

Petitioner is currently serving a 120-month term of imprisonment imposed by the United States District Court for the District of New Jersey for conspiracy to distribute a controlled substance. (Doc. No. 10-2 at 4.) He is 36 years old and has

5

been assigned a CARE1 medical status, indicating that he is healthy or requires only simple chronic care. (*Id.* at 14; Doc. No. 10 at 9.) Petitioner has been assigned a low security classification and a medium recidivism risk PATTERN. (Doc. No. 10-2 at 14.)

On November 24, 2020, a PCR nasal swab test collected from Petitioner on the previous day returned with a positive result for coronavirus. (*Id.* at 17.) On November 26, 2020, a Physician's Assistant conducted an initial evaluation of Petitioner following his positive result. (*Id.* at 19-20.) At that time, Petitioner denied experiencing any symptoms. (*Id.* at 19.) His vital signs, respiration rate, and oxygen saturation levels were within normal limits. (*Id.*) Petitioner was instructed to seek care immediately if his condition worsened. (*Id.* at 20.) Petitioner received additional screenings on November 27, 2020, November 30, 2020, December 1, 2020, December 2, 2020, and December 3, 2020. (*Id.* at 21-25.) On each occasion, Petitioner was asymptomatic, and his vitals were within normal limits. (*Id.*) On December 3, 2020, Petitioner completed his ten (10) days of isolation and was cleared from isolation because he was free of symptoms. (*Id.* at 21.) Petitioner is considered to be recovered from COVID-19. (*Id.* at 14.) As of January 4, 2021, there were 141 inmate and twenty-two (22) staff COVID-19 cases at FCI Allenwood-Medium. *See COVID-19 Coronavirus*,

https://www.bop.gov/coronavirus (select "Full breakdown and additional details" hyperlink and search for FCI Allenwood-Medium) (last accessed Jan. 4, 2021 7:17 a.m.).

Petitioner also references his mental health in his § 2241 petition. The record, however, reflects that Petitioner was last seen by psychology services on June 18, 2020. (Doc. No. 10-2 at 26.) During that visit, Petitioner "noted that his anxiety continues to be a problem." (*Id.*) Staff reminded Petitioner "of those strategies discussed in earlier sessions of both cognitive and behavioral nature and was encouraged to utilize these consistently to manage feelings of anxiety." (*Id.*) Petitioner "noted greater interest in following up with his PA to discuss further medication options as he expressed belief the prescribed Buspar is not effective." (*Id.*) At that time, "[n]o further intervention appear[ed] warranted." (*Id.*) During a clinical encounter on October 26, 2020, medical staff noted that Petitioner's depression and anxiety were "well controlled" with medication and his prescription for fluoxetine was renewed. (*Id.* at 27-30.)

Under the standards set forth in the Attorney General's memoranda, Petitioner is not a priority candidate for home confinement because he is housed at a medium security institution and has a medium risk of recidivism according to his PATTERN score. (*Id.* at 14.) On September 3, 2020, Respondent responded to an

7

email from Petitioner requesting approval or denial for home confinement. (*Id.* at 16.) Respondent told Petitioner that there was no record of him requesting home confinement. (*Id.*) Petitioner never responded.

The BOP's computerized record of Petitioner's administrative remedy submissions indicates that he has filed no administrative remedies relating to home confinement. (*Id.* at 6-13.) On September 17, 2020, Petitioner filed administrative remedy 1047498-F1, requesting compassionate release. (*Id.* at 8.) The submission was rejected because Petitioner did not sign the request. (*Id.*) He was instructed to resubmit it in proper form. (*Id.*) On October 2, 2020, Petitioner submitted administrative remedy 1050464-F1, again requesting compassionate release. (*Id.* at 9.) In this remedy, Petitioner specifically requested a reduction in sentence or compassionate release, not home confinement. (*Id.* at 10-13.) Respondent denied his request on October 16, 2020. (*Id.* at 13.)[1]

## II.   DISCUSSION

Respondent asserts that Petitioner's § 2241 petition should be denied because: (1) Petitioner failed to exhaust his administrative remedies; (2) BOP decisions concerning home confinement are not subject to judicial review; and (3)

---

[1] Petitioner has a motion for a reduction of sentence pending before the sentencing court. *See United States v. Gonzalez*, No. 3:16-cr-398 (D.N.J.) (Doc. No. 56).

Petitioner cannot establish an Eighth Amendment violation.[2] (Doc. No. 10 at 12.) The Court considers each argument in turn.

### A. Exhaustion of Administrative Remedies

While § 2241 does not contain an explicit statutory exhaustion requirement, the United States Court of Appeals for the Third Circuit has consistently required a petitioner to exhaust his administrative remedies before filing a § 2241 petition. *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Id.* at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Thus, "a federal prisoner who . . . fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial

---

[2] The United States Court of Appeals for the Third Circuit recently concluded that immigration detainees could proceed under § 2241 to challenge allegedly unconstitutional conditions of confinement due to the COVID-19 pandemic. *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 324-25 (3d Cir. 2020). The Third Circuit cautioned that it was "not creating a garden variety cause of action." *Id.* at 324. In light of *Hope*, the Court "will assume, *without deciding*, that it has jurisdiction under § 2241 to consider a federal prisoner's COVID-19 related conditions of confinement claim." *Byrne v. Ortiz*, No. 20-12268 (RBK), 2020 WL 7022670, at *3 (D.N.J. Nov. 30, 2020).

review of his habeas claim absent a showing of cause and prejudice." *Id.* at 762. Exhaustion, however, is not required when it would not promote these goals, such as when exhaustion would be futile. *See, e.g.*, *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998).

This Court has recognized that a § 2241 petitioner seeking release to home confinement due to the COVID-19 pandemic must first exhaust his administrative remedies. *See Gottstein v. Finley*, No. 3:20-cv-935, 2020 WL 3078028, at *3-4 (M.D. Pa. June 10, 2020). To do so, an inmate must file a request with the Warden and then file an appeal to the BOP's Regional Director within twenty (20) days of the date of the Warden's response. 28 C.F.R. §§ 542.14 & 542.15(a). If his appeal to the Regional Director is denied, the inmate must appeal that decision to the BOP's General Counsel within thirty (30) days. *Id.* The appeal to the General Counsel is the final level of administrative review. *Id.*

In his § 2241 petition, Petitioner suggests that he is awaiting a response to his request for home confinement. (Doc. No. 1 at 3.) The record, however, reflects that while Petitioner has submitted requests for compassionate release, he has not submitted an administrative remedy request regarding home confinement. The Third Circuit recently reiterated that "strict compliance with . . . exhaustion requirement[s] takes on added—and critical—importance" during the COVID-19

10

pandemic "[g]iven the BOP's shared desire for a safe and healthy prison environment." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Based on this principle, courts within the Third Circuit have routinely dismissed unexhausted requests for home confinement due to the pandemic. *See, e.g.*, *Adams v. Trate*, No. 1:20-cv-237, 2020 WL 7337806, at *2 (W.D. Pa. Dec. 14, 2020); *Gottstein*, 2020 WL 3078028, at *3; *Jackson v. White*, No. 3:20-cv-919, 2020 WL 3036075, at *5-7 (M.D. Pa. June 5, 2020); *Cordaro v. Finley*, 3:10-cr-75, 2020 WL 2084960, at *4 (M.D. Pa. Apr. 30, 2020). The Court agrees with such reasoning and, therefore, concludes that Petitioner's § 2241 petition must be denied for failure to exhaust his administrative remedies. Nevertheless, the Court will address the merits of his petition below.

    **B.**     **Merits of Petitioner's § 2241 Petition**

        **1.**     **Home Confinement Request**

Even if Petitioner had exhausted his request for home confinement, the Court could not grant his request because "the CARES Act provides the discretion for determining early home confinement release solely to the BOP." *United States v. Mathews*, No. 2:86-cr-197, 2020 WL 6781946, at *2 (E.D. Pa. Nov. 18, 2020); *see also Adams*, 2020 WL 7337806, at *2 (collecting cases); *United States v. Robinson*, No. 4:07-cr-389-10, 2020 WL 5793002, at *5 n.2 (M.D. Pa. Sept. 28,

2020) (noting that "the Court does not have the authority to grant [a request for home confinement] in that the determination of an inmate's place of incarceration is committed to the discretion of the BOP director"). Attorney General Barr "used this authority and set out the factors to guide the BOP's determination in his March 26 and April 3 memoranda." *Aigebkaen v. Warden*, No. 20-5732 (NLH), 2020 WL 6883438, at *4 (D.N.J. Nov. 24, 2020).

The plain text of the CARES Act grants additional discretion to the Attorney General and the BOP; it does not require the BOP to release all at-risk, non-violent inmates on home confinement. Because "Congress has not identified any further circumstance in which the Bureau either must grant" home confinement "or is forbidden to do so . . . all [the Court] must decide is whether the Bureau, the agency empowered to administer" the home confinement program, "has filled the statutory gap 'in a way that is reasonable.'" *Lopez v. Davis*, 531 U.S. 230, 242 (2001) (quoting *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995)). Under the standards set forth in the Attorney General's memoranda, Petitioner is not a priority candidate for home confinement because he is housed at a medium security institution and has a medium risk of recidivism according to his PATTERN score. (Doc. No. 10-2 at 14.) Thus, Petitioner cannot demonstrate that the BOP's interpretation of the CARES Act is unreasonable as

applied to him. The Court, therefore, cannot grant Petitioner's request to be released on home confinement.

### 2. Eighth Amendment Claim

In his § 2241 petition, Petitioner asserts, in a conclusory fashion, that the conditions of his confinement at FCI Allenwood-Medium violate the Eighth Amendment. (Doc. No. 1 at 2.) Petitioner maintains that: (1) his mental health is "deteriorating" because of the pandemic; (2) FCI Allenwood-Medium is providing inadequate testing; (3) social distancing is impossible because he has a cellmate; and (4) FCI Allenwood-Medium has an inadequate HVAC system to eliminate COVID-19. (*Id.* at 6-7.)

The Eighth Amendment guarantees a prisoner's right to be free from "cruel and unusual punishments" while in custody. *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) (quoting *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (quoting U.S. Const. amend. VIII)). An Eighth Amendment claim challenging conditions of confinement has two elements: (1) the deprivation asserted must be "sufficiently serious" to violate the Constitution, and (2) the prison official or officials responsible for the deprivation "must have a sufficiently culpable state of mind." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The second element can be proven by establishing that

prison officials "acted with deliberate indifference to the inmate's health or safety or [to] conditions of confinement that violated the inmate's constitutional rights." *Id.* (citation omitted). Stated differently, prison officials must "both know of and disregard an excessive risk to inmate health or safety" or a violation of the inmate's constitutional rights. *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (citations omitted).

The Court "recognize[s] that the prison setting raises unique concerns regarding the spread of the COVID-19 virus since, by their very nature, prisons are confined spaces unsuited for social distancing." *Rodriguez-Francisco v. White*, No. 1:20-cv-1076, 2020 WL 4260766, at *3 (M.D. Pa. July 24, 2020). However, nothing in the record suggests that FCI Allenwood-Medium is not complying with the modified parameters of operation set forth *supra*. While it is unfortunate that Petitioner recently contracted COVID-19, the record reflects that he remained asymptomatic and was able to be released from isolation after the ten (10)-day isolation period. Moreover, Plaintiff's claims of deteriorating mental health are contradicted by his psychology records.

Furthermore, contrary to Petitioner's assertion, FCI Allenwood-Medium has been testing for the COVID-19 virus. As of January 4, 2021, 929 inmates have been tested, 459 with positive results. *See COVID-19 Coronavirus*,

14

https://www.bop.gov/coronavirus (select "Learn more about the data and view individual facility stats" hyperlink) (last accessed Jan. 4, 2021 7:19 a.m.). Staff members have also been tested, with twenty-two (22) testing positive and fourteen (14) fully recovered. *See COVID-19 Coronavirus*, https://www.bop.gov/coronavirus (select "Full breakdown and additional details" hyperlink and search for FCI Allenwood-Medium) (last accessed Jan. 4, 2021 7:18 a.m.). Thus, even when considering Petitioner's mental health, he has neither identified a sufficiently serious deprivation that rises to the level of an Eighth Amendment violation nor has he established that officials at FCI Allenwood-Medium have acted with deliberate indifference to his health or safety. "[Petitioner] has not identified, let alone proven, any official conduct that exhibits deliberate indifference to the health or safety or prisoners during this unprecedented worldwide pandemic." *Rodriguez-Francisco*, 2020 WL 4260766, at *5. Thus, Petitioner is not entitled to the habeas relief he seeks.

### III.   CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge